IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NATHAN WUNDERLIN, | ) | CIVIL NO. 17-00392 JAO-KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANT |
| vs. | ) | AB CAR RENTAL SERVICES, INC'S |
| | ) | MOTION FOR SUMMARY |
| AB CAR RENTAL SERVICES, | ) | JUDGMENT, OR IN THE |
| INC., et al., | ) | ALTERNATIVE, PARTIAL |
| | ) | SUMMARY JUDGMENT |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AB
CAR RENTAL SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## I.  INTRODUCTION

Plaintiff Nathan Wunderlin ("Plaintiff") sued his former employer,

Defendant AB Car Rental Services, Inc. ("Defendant"),[1] pursuant to Hawai'i law,

alleging that he was unlawfully terminated based on his ancestry, race, and color;

that he suffered a hostile work environment and retaliation; and that he should be

awarded punitive damages.  Defendant seeks summary judgment, or, in the

alternative, partial summary judgment.  For the reasons set forth below, the Motion

_____

[1]  Plaintiff erroneously brought his claims against Avis Budget Group, Inc.  On
April 6, 2018, this Court entered a stipulation and order regarding the substitution
of Defendant for Avis Budget Group, Inc.  Doc. No. 22.

is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A. Facts

Unless otherwise indicated, the following facts are not in dispute. Plaintiff, a Caucasian male, worked at Defendant's Kailua-Kona Airport location from April 27, 2008 until his termination on July 22, 2015. Plaintiff's Concise Statement of Facts ("Pl.'s CSF"), Decl. of Nathan Wunderlin ("Wunderlin Decl.") at ¶¶ 3, 4, 191. Plaintiff worked as a rental sales agent (RSA), and his hourly wage was supplemented by incentive pay for "upsells"—the sale of additional insurance coverage and rental products. Decl. of Christopher Rolletta ("Rolletta Decl.") at ¶¶ 7–8. He earned a high income consistent with that of a good salesperson. Pl.'s CSF, Ex. F; Defendant's Concise Statement of Facts ("Def.'s CSF") at ¶ 4.

Defendant required all employees, including Plaintiff, to follow its policies and rules, which included the Code of Conduct and Business Principles, Work Rules, and Customer Service and Sales Rules of the Road. Def.'s CSF at ¶ 4. These policies and rules prohibited employees from selling a more expensive rental or charging for insurance without the customers' approval, making adjustments at the end of a sale, modifying rental agreements with the intent of defrauding the customer, or behaving dishonestly toward or manipulating

2

customers.  *Id.* at ¶¶ 5, 7.

Plaintiff's first supervisor was a Caucasian male, who was replaced sometime at the end of 2013 or the beginning of 2014 by Allen Inda, a Filipino male.  *Id.*, Rolletta Decl. at ¶ 6; Pl.'s CSF, Wunderlin Decl. at ¶¶ 5, 17.  Cheryl Beimes, whose ethnicity is in dispute, also supervised Plaintiff.  Def.'s CSF, Rolletta Decl. at ¶ 6; Pl.'s CSF, Wunderlin Decl. at ¶ 22.  Mark Winkleman, a Caucasian male, was Defendant's operations manager.  Pl.'s CSF, Declaration of Mark Winkleman ("Winkleman Decl.") at ¶¶ 3–4.  According to Winkleman, Inda instructed him to monitor and keep separate files of customer complaints against Plaintiff and Kevin Ditty, another Caucasian male.  Pl.'s CSF, Winkleman Decl. at ¶ 7.  Inda did not tell Winkleman to monitor or keep files of anyone else.  *Id.* at ¶ 12.

Between 2008 and 2015, Plaintiff received approximately a dozen warnings for violations of work rules.  Def.'s CSF at ¶ 8.  For instance, on May 28, 2014, Defendant gave Plaintiff his first warning for defrauding customers. Def.'s CSF, Ex. 15.  On November 9, 2014, Defendant issued Plaintiff a written warning for charging customers for upgrades and coverages without their consent. *Id.*, Ex. 16.  Plaintiff admits receiving the write-ups but denies the accuracy of the allegations.  Pl.'s CSF at ¶ 22.

3

On January 9, 2015, a state agency performed an audit at the Kailua-Kona Airport location.  Def.'s CSF, Ex. 8.  According to Plaintiff's written warning, the agency sent a letter to Defendant, dated January 20, 2015, reporting that an investigator witnessed Plaintiff lying to a customer and adding insurance to a purchase after the customer declined such insurance.  Def.'s CSF, Ex. 8.  The parties dispute the accuracy of the state agency's letter.  Following the receipt of this state agency's letter, Defendant received two more customer complaints alleging that Plaintiff added unauthorized charges to purchases.  *Id.*  On April 2, 2015, Defendant suspended Plaintiff and issued him a final written warning for violating company policy.  *Id.*  Plaintiff had received a total of fifteen customer complaints prior to his suspension.  *Id.*, Exs. 15, 16.

In an email dated April 8, 2015, Plaintiff informed Inda and a member of the Human Resources Division for the first time that he believed his reprimands and suspension were the result of race discrimination.  He made no mention of a hostile work environment.  *Id.*, Ex. 9.

By letter dated May 4, 2015, addressed to Human Resources Director Christopher Rolletta, Plaintiff first reported instances of racially charged comments.  *Id.* at ¶ 16.  Plaintiff described racial tension in the workplace, and multiple instances of the derogatory use of the word "haole."  *Id.* & Ex. 11.

Thereafter, Defendant sent Martin Mylott, the Hawaiʻi Regional Manager, and Gail Sugimoto, the local Human Resources manager, to the Kailua-Kona location to investigate. In collaboration with Rolletta, they determined that there had been no race-based misconduct by any of Plaintiff's coworkers. Def.'s CSF at ¶¶ 34–35.

At the hearing on the Motion, Plaintiff's counsel conceded that the record is unclear as to how many additional racially derogatory comments were made by non-white employees after the investigation. However, he identified an incident on April 9, 2015, during which a coworker told Plaintiff that a cultural rites dispute was occurring "because of all you fucking haoles who came over and messed up our land." Pl.'s CSF, Wunderlin Decl. ¶ 71. Beimes was present when the statement was made, but at the hearing, the parties disputed whether she had heard it. Although this incident allegedly happened after Plaintiff sent the email alleging race discrimination on April 8, 2018, it occurred before Defendant's investigation into Plaintiff's allegations.

Upon his return from suspension, Plaintiff received seven more customer complaints. He again does not challenge the fact of the complaints, but rather the truth of their substance. Def.'s CSF at ¶ 36; Pl.'s CSF at ¶ 36. Sugimoto advised Plaintiff of the complaints on July 2, 2015, and Mylott

terminated him on July 22, 2015. Def.'s CSF at ¶¶ 37–38. The decision to

terminate Plaintiff was made primarily by Mylott, with assistance from Rolletta.

*Id.*, Rolletta Decl. at ¶ 28. Defendant also terminated Ditty for misleading

customers and charging for insurance after customers declined. Def.'s CSF at

¶ 24.

Plaintiff also contends that Defendant did not terminate Isaac Flores,

a non-Caucasian RSA who received similar customer complaints. Pl.'s CSF at

¶ 51. It is undisputed that Defendant suspended Flores and that he resigned

thereafter. Pl.'s CSF at ¶ 51; Def.'s CSF at ¶ 51.

## B. Procedural History

Plaintiff filed his Complaint in the Circuit Court of the Third Circuit,

State of Hawai'i, on May 23, 2017, which Defendant then removed to this Court

on August 9, 2017. Doc. No. 1. The Complaint alleges that Defendant

discriminated against Plaintiff on the basis of his ancestry (Count I), race (Count

II), and color (Count III); that he was subject to a hostile work environment

(Counts I, II, and III); and that Defendant retaliated against him (Count IV), in

violation of Hawai'i Revised Statutes ("HRS") §§ 378-2(a)(1)(A) and

378-2(a)(2).[2] Doc. No. 1-1 at ¶¶ 182–200. Plaintiff seeks various compensatory

---

[2] The Complaint cites incorrect HRS provisions.

damages and relief, as well as punitive damages.  Doc. No. 1-1 at ¶ D.

Defendant filed the present Motion for Summary Judgment on June 1, 2018.  Doc. No. 26.  Plaintiff filed an opposition on July 20, 2018.  Doc. No. 31.  Defendant submitted its Reply on July 27, 2018.  Doc. No. 33.  The Motion was heard on October 3, 2018.

### III.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Citrate*, 477 U.S. 317, 323 (1986)); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  On a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party.  *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth

specific facts showing that there is a genuine issue for trial.  *T.W. Elec.*, 809 F.2d

at 630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for

summary judgment in the absence of any significant probative evidence tending to

support its legal theory.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d

1551, 1558 (9th Cir. 1991).  The nonmoving party cannot stand on its pleadings,

nor can it simply assert that it will be able to discredit the movant's evidence at

trial.  *T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F.

Supp. 1450, 1455 (D. Haw. 1991).

   If the nonmoving party fails to assert specific facts, beyond the mere

allegations or denials in its response, summary judgment may be entered.  *Lujan v.

Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e).  There is no

genuine issue of fact if the opposing party fails to offer evidence "sufficient to

establish the existence of an element essential to that party's case[.]"  *Celotex*, 477

U.S. at 322.

   In considering a motion for summary judgment, "the court's ultimate

inquiry is to determine whether the 'specific facts' set forth by the nonmoving

party, coupled with undisputed background or contextual facts, are such that a

rational or reasonable jury might return a verdict in its favor based on that

evidence."  *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477

U.S. 242, 255 (1986)).  Inferences must be drawn in favor of the nonmoving

party.  *Id.*  However, when the opposing party offers no direct evidence of a

material fact, inferences may be drawn only if they are reasonable in light of the

other undisputed background or contextual facts and if they are permissible under

the governing substantive law.  *Id.* at 631–32.  If the factual context makes the

opposing party's claim implausible, that party must come forward with more

persuasive evidence than otherwise necessary to show there is a genuine issue for

trial.  *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal.*

*Architectural Bldg. Prods., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468

(9th Cir. 1987)).

## IV.  DISCUSSION

### A.  The Sham Affidavit Allegation

As a preliminary matter, the Court addresses Defendant's request to

strike certain paragraphs from Plaintiff's Declaration as a sham declaration. Def.'s

Reply 1.  Specifically, Defendant asks the Court to strike paragraphs 79, 89, 102,

104, and 162 of the Declaration because they either contain contradictions with

his deposition testimony or address information he could not recall in his

deposition.  The Court denies the request.

The sham affidavit rule prevents a party from creating "an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). It "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." *Id.* at 266–67. "In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.'" *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir. 2009)). "[T]he non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995). Indeed, "[t]he sham affidavit rule applies where there is a clear inconsistency in testimony, not where the possibility of memory lapses exists." *Cabasug v. Crane Co.*, 989 F. Supp. 2d 1027, 1055 (D. Haw. 2013).

Defendant cites several alleged contradictions between Plaintiff's deposition testimony and Declaration, each of which addresses the use of the word "haole" by coworkers Rustin Cruz and Jeff Matsuyama, and Inda. Defendant invents contradictions in an attempt to invoke the sham affidavit rule. For example, during Plaintiff's deposition, Plaintiff stated, regarding Cruz and Matsuyama: "[Matsuyama made the] same kind of comments like Rustin [Cruz] would make . . . . And, oh, it's these f-ing haole customers," and, "[H]e would just call me a haole." Def.'s CSF, Ex. 1 at 115–16. During his deposition, he also characterized some coworkers' comments as jokes, but as derogatory or crude jokes that, "[he didn't] find funny at all." Def.'s CSF, Ex. 1 at 91, 114. Plaintiff's Declaration, stating that, "Cruz called [him] a 'stupid fucking haole' to [his] face," Pl.'s CSF, Wunderlin Decl. at ¶ 79, does not contradict this deposition testimony.

Similarly, with respect to Matsuyama, Plaintiff testified at his deposition:

> And I told him, Man, I don't appreciate that, you know. You know, don't worry, brah. It's all good, you know. Stuff like that. And he just–he would call me a haole. I couldn't tell you–I don't remember the exact sentences, but he knew I didn't like it and he continued to do it. He got a rise out of it.

Def's CSF, Ex. 1 at 116. Plaintiff appears to have been quoting Matsuyama when he stated, "It's all good." Plaintiff's Declaration, wherein he said, "Matsuyama

11

used the word 'haole' and the term 'fucking stupid haole' over a hundred times in my presence," Pl.'s CSF, Wunderlin Decl. at 89, does not contradict his deposition.

As for Inda, Plaintiff's deposition testimony indicated that, while Inda did not direct the term "haole" at him, Inda used the word. He also stated generally, "[i]t was a loose word around that location. It was flying out of their mouths constantly." Def.'s CSF, Ex. 1 at 89–90. In his Declaration, Plaintiff said, "Mr. Inda himself, my supervisor, would use the word haole constantly. During the time he was my supervisor, I would hear Mr. Inda use the word at least a couple times a week." Pl.'s CSF, Wunderlin Decl. at ¶ 102. This statement clarifies testimony from Plaintiff's deposition, and should not be stricken under the sham affidavit rule.

Defendant also argues that Plaintiff cannot supplement his deposition testimony with newly recalled information regarding coworkers' use of "haole." Def.'s Reply 4. However, Plaintiff's deposition testimony and Declaration both mention his coworkers' frequent use of the word "haole." Accordingly, Plaintiff's Declaration does not contradict his deposition testimony, and the Court declines to strike portions of Plaintiff's Declaration pursuant to the sham affidavit rule.

## B. Counts I, II, and III: Discrimination

Plaintiff alleges discrimination in violation of HRS § 378-2(a)(1)(A), which prohibits the termination of an employee based on, among other things, race, color, and ancestry. Under Hawaiʻi law, plaintiffs have two avenues through which they may establish a prima facie case of discrimination. The first is through the "direct evidence" or "mixed motive" approach, in which "the plaintiff must show by direct evidence that discriminatory factors motivated the adverse employment decision." *Shoppe v. Gucci Am., Inc.*, 94 Hawaiʻi 368, 378, 14 P.3d 1049, 1059 (2000) (internal citations omitted). "Second, a plaintiff may attempt to prove individual disparate treatment by adducing circumstantial evidence of discrimination." *Id.* The Hawaiʻi Supreme Court utilizes the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) when circumstantial evidence of employer discrimination is at issue. *Shoppe*, 94 Hawaiʻi at 378, 14 P.3d at 1059.

In applying § 378-2, courts may look to federal courts' interpretation of Title VII for guidance. *Arquero v. Hilton Hawaiian Vill. LLC*, 104 Hawaiʻi 423, 429–30, 91 P.3d 505, 511–12 (2004); *see also Aoyagi v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 3d 1043, 1056 (D. Haw. 2015). Under federal law, a plaintiff responding to a summary judgment motion may elect to "proceed by

using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant]." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

Direct evidence is evidence "which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1094–95 (9th Cir. 2005). Evidence that raises a genuine issue of fact as to whether a supervisor had discriminatory animus toward the plaintiff's race does not necessarily constitute evidence that the supervisor subjected the plaintiff to any adverse employment action because of that discriminatory animus. *Qin Li v. City & Cty. of Honolulu*, No. CV 14-00573 LEK-RLP, 2017 WL 3015827, at *8 (D. Haw. July 14, 2017) (citing *Lalau v. City & Cty. of Honolulu*, 938 F. Supp. 2d 1000, 1013 (D. Haw. 2013); *Machado v. Real Estate Res., LLC*, No. CIV. 12-00544 RLP, 2013 WL 3944511, at *7 (D. Haw. July 30, 2013)). Circumstantial evidence is "evidence that requires an additional inferential step to demonstrate discrimination." *Machado*, 2013 WL 3944511, at *6 (citing *Coghlan*, 413 F.3d at 1095).

### 1. Plaintiff Has Not Presented Direct Evidence of Discrimination

Plaintiff argues, in conclusory fashion, that he survives summary judgment because of his presentation of an abundance of direct evidence that Caucasians–he and Ditty–suffered "intentional, uninhibited, and relentless" harassment and discrimination in the workplace. Even viewing the evidence in the light most favorable to Plaintiff, the Court finds that he has not provided direct evidence that a discriminatory reason more likely than not motivated Defendant's termination decision.

When asked at the hearing whether Plaintiff has direct evidence that discriminatory factors motivated his firing, his counsel cited a series of events that, at best, amount to circumstantial evidence of discriminatory animus. For example, Plaintiff alleges that Ditty heard Inda say, "These haoles make all the money." Pl.'s CSF, Decl. of Kevin Ditty ("Ditty Decl.") at ¶ 14. Although this statement arguably raises a genuine issue of material fact as to whether Inda had discriminatory animus, it does not constitute direct evidence that Plaintiff's termination was motivated by racial animus. Further, Mylott, not Inda, terminated Plaintiff and Plaintiff has not adduced evidence that discriminatory animus motivated Mylott's decision. *See, e.g.*, *Vasquez v. Cty. of Los Angeles*, 349 F.3d

634, 640 (9th Cir. 2003) ("The only evidence Vasquez offers are the remarks of Berglund. However, Berglund was not the decisionmaker, and Vasquez has offered no evidence of discriminatory remarks made by Leeds. Therefore, Vasquez must show a nexus between Berglund's discriminatory remarks and Leeds' subsequent employment decisions. Vasquez has not shown the necessary nexus because Leeds conducted her own thorough investigation, and as mentioned above, Vasquez presents no evidence that discriminatory animus motivated Leeds' decision."); *Qin Li*, 2017 WL 3015827, at *7–8 (internal citation omitted) (holding that a supervisor's comments that "Chinese food is like doo-doo" and Chinese people were "nasty" and "bad" were direct evidence of animus, but "not necessarily . . . direct evidence that [Plaintiff's supervisor] subjected [Plaintiff] to any adverse employment action because of that discriminatory mindset").

To the extent Inda's comment evidences discriminatory animus, it is merely circumstantial, and nevertheless fails to demonstrate that Mylott's decision to terminate Plaintiff was motivated by discriminatory animus. *Vasquez*, 349 F.3d at 640. Given the insufficiency of Plaintiff's direct evidence, he must proceed under the *McDonnell Douglas* framework.

### 2.  Plaintiff Established a Prima Facie Case of Discrimination

To establish a prima facie case of discrimination under the

*McDonnell Douglas* framework, Plaintiff must demonstrate that: (1) he belongs to a protected class; (2) he was qualified for the job he held; (3) he suffered an adverse employment action (such as firing); and (4) similarly situated individuals outside the protected class were treated more favorably "or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *see also Furukawa v. Honolulu Zoological Soc'y*, 85 Hawai'i 7, 15, 936 P.2d 643, 651 (1997).

The Court concludes that Plaintiff has established a prima facie case of discrimination. Only the second and fourth elements of the applicable standard claim are at issue, as it is undisputed that Plaintiff belongs to a protected class and that he suffered an adverse employment action.

### a. Qualification

A plaintiff can show evidence that he or she is qualified for a position by holding the position for a period without discipline or receiving positive performance reviews. *See Gibo v. City & Cty. of Honolulu, Dep't of Envtl. Servs.*, No. 07-00627 LEK, 2009 WL 2017874, at *2 (D. Haw. July 10, 2009); *see also Janto v. Roman Catholic Church in State of Haw.*, No. 29255, 2012 WL 2446149, at *1 (Haw. Ct. App. June 27, 2012) (finding plaintiff was not qualified when he

took between 26 and 68.5 sick days per year when entitled to only 10 days).

While numerous customers lodged complaints against Plaintiff, Inda testified that

he had new employees shadow Plaintiff at least once a year between 2013 and

2015, Pl.'s CSF, Ex. F at 62, and that Plaintiff was capable of making a substantial

income through commissions. *Id.*, Ex. F at 29. Viewing both statements in the

light most favorable to Plaintiff, a genuine issue of material fact exists as to

whether Plaintiff was qualified for the job.

### b. Similarly Situated Individuals Outside the Protected Class

Plaintiffs can show an individual is similarly situated by

demonstrating that another employee has a similar job and displays similar

conduct, *Vasquez*, 349 F.3d at 641, but to meet this element, they must also show

the similarly situated employee was treated more favorably. *See Thomas v.*

*Spencer*, No. CV 15-00121 RLP, 2018 WL 3638080, at *7 (D. Haw. July 30,

2018) (finding the fourth element was not established when plaintiff did not

provide evidence that similarly situated employees received larger bonuses);

*Jinadasa v. Brigham Young Univ. Haw.*, No. 14-00441 SOM/KJM, 2016 WL

6645767, at *5 (D. Haw. Nov. 9, 2016) ("A mere assertion . . . is insufficient to

raise a genuine issue of fact as to whether [the plaintiff] was paid less . . . because

of his race."). Plaintiff fails to show the more favorable treatment of similarly situated individuals outside his protected class.

Plaintiff has demonstrated that Flores was similarly situated. Flores held the same position of rental sales agent and displayed similar conduct, receiving multiple customer complaints. Pl.'s CSF, Winkleman Decl. at ¶ 8, Exs. G, H. Plaintiff has failed, however, to show that Flores received favorable treatment. Plaintiff claims that Flores "was not singled out for hyper scrutiny by Inda." Pl.'s Mem. in Opp'n at 23. However, Flores received multiple warnings and was suspended. Pl.'s CSF, Exs. G, H. Flores quit after receiving his final written warning. Def.'s CSF at ¶ 51. Plaintiff therefore cannot provide evidence that Flores was treated more favorably, as Flores did not work long enough after his final warning for Defendant to contemplate terminating him.[3]

If a plaintiff cannot show evidence that a similarly situated employee outside the plaintiff's protected class was treated more favorably, he or she can still meet the fourth element by providing evidence that "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn*, 615 F.3d at 1156; *see also Furukawa*, 85 Hawai'i at 15,

---

[3] At the hearing, defense counsel claimed Flores would have been terminated if he had not quit.

936 P.2d at 651. Here, while Plaintiff has not shown that a similarly situated

employee was treated more favorably, he has provided sufficient circumstantial

evidence that could give rise to an inference of discrimination. As earlier

discussed, Inda purportedly commented that "haoles make all the money." Pl.'s

CSF, Ditty Decl. at ¶ 14. Winkleman also indicated that Inda told him to keep

separate files only on Plaintiff and Ditty, who were the two high-earning

Caucasian males working at the Kailua-Kona location. *Id.*, Winkleman Decl. at

¶ 7. When viewed in the light most favorable to Plaintiff, this circumstantial

evidence could give rise to an inference of discrimination. Therefore, Plaintiff has

satisfied the fourth element and established a prima facie case.

### 3. Defendant's Basis for the Adverse Employment Action

Plaintiff having established a prima facie case, the burden shifts to

Defendant to outline "a legitimate, nondiscriminatory reason for the adverse

employment action" in the form of admissible evidence. *Shoppe*, 94 Hawai'i at

378, 14 P.3d at 1059. The Court concludes that Defendant easily satisfies this

burden by proffering admissible evidence of a nondiscriminatory reason for

Plaintiff's firing: the numerous and repeated customer complaints against

Plaintiff. *See Thomas*, 2018 WL 3638080, at *7 (holding that employee

complaints against the plaintiff showed evidence of a nondiscriminatory reason

for transferring the plaintiff); *see also Qin Li*, 2017 WL 3015827, at *11 (burden satisfied by the defendant's evidence that the plaintiff received numerous customer complaints for rudeness). Although Plaintiff challenges the legitimacy of the customer complaints, he does not suggest that Defendant fabricated the complaints.

### 4. Circumstantial Evidence of Pretext

Once Defendant produces a nondiscriminatory reason for the adverse employment action, the burden shifts back to Plaintiff and the *McDonnell Douglas* "presumption of discrimination drops out of the picture." *McGinest*, 360 F.3d at 1123 (internal citations and quotations omitted). At this point, Plaintiff must produce some evidence suggesting that his termination "was due in part or whole to discriminatory intent[.]" *Id.* In other words, Plaintiff must counter Defendant's explanation that the numerous customer complaints lodged against him formed the basis of the termination decision. *Id.* Plaintiff may alternatively offer "proof that [Defendant's] explanation is unworthy of credence." *Id.* This form of proof is "[a] form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Id.* (internal citation omitted); *Shoppe*, 94 Hawai'i at 379, 14 P.3d at 1060 (internal citation omitted) ("A plaintiff may establish pretext 'either directly by persuading the court that a discriminatory

21

reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'").

In support of his argument, Plaintiff proffers specific and substantial facts as circumstantial evidence of pretext.  First, Plaintiff highlights the section of his termination letter stating he was fired, in part, because he did not tell a customer that insurance was optional.  Pl.'s CSF, Wunderlin Decl. ¶¶ 165–68.  He contends that he was not obligated to do so, and points to evidence that Defendant "does not require the RSA to state [] products are 'optional' up front."  *Id.*, Ex. A.[4] This would certainly allow a jury to reasonably conclude that the support for Plaintiff's termination was pretextual.

Additionally, and as already discussed, Ditty heard Inda say that haoles make all the money; Winkleman was directed to monitor and keep separate files of customer complaints on Ditty and Plaintiff; and Winkleman was not required to scrutinize Flores, even though he too received customer complaints. Taking this evidence in the light most favorable to Plaintiff, there is an indication of a racial motivation for the monitoring, and, thus, by extension, a potential racial

---

[4] At the hearing, defense counsel characterized Defendant's policy on this topic as nuanced.  She conceded, however, that the Court is to consider the evidence in the light most favorable to Plaintiff.  Doing so here supports Plaintiff's position that he was allegedly terminated–at least in part–for failing to do something Defendant did not require him to do.

motivation for Inda reporting to his superiors about Plaintiff's performance.

Defendant argues that any evidence of Beimes' or Inda's racial animus cannot support Plaintiff's racial discrimination claim, as they did not make the decision to terminate Plaintiff. Plaintiff cites *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007), for the proposition that because Inda and Beimes allegedly influenced the termination position, their bias can be imputed to Mylott and Rolletta. The Court can impute Inda and Beimes' animus to Mylott and Rolletta if Plaintiff can show the "employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process." *Id.* Plaintiff has provided evidence that Inda and Beimes played a role in reporting customer complaints. Ditty explained that, "Mr. Inda and Ms. Beimes had the discretion to determine if a sales agent would be written up for a customer complaint or not." Pl.'s CSF, Ditty Decl. at ¶ 46. There is a genuine issue of material fact as to whether Beimes and Inda had a racial motivation for reporting Plaintiff's customer complaints to Mylott and Rolletta. Consequently, there is a genuine issue of material fact as to whether Defendant's nondiscriminatory reason for firing him may have been pretextual. Plaintiff's discrimination claim therefore survives summary judgment and the motion is DENIED as to that claim.

## C. Counts I, II, and III: Hostile Work Environment

To prevail on a hostile work environment claim under federal law, a plaintiff must show: "(1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642 (internal citation omitted).

The Hawai'i Supreme Court conducts a "severe and pervasive" inquiry that differs slightly from the Ninth Circuit test. Pursuant to Hawai'i law, "[A]nalysis of whether particular harassing conduct was severe and pervasive is separate and distinct from the remaining requirements of a plaintiff's claim: it is the harasser's conduct which must be severe or pervasive, not its effect on the plaintiff or the work environment." *Arquero*, 104 Hawai'i at 431, 91 P.3d at 513 (internal citation omitted); *see also Rhoades v. Installation Servs., Inc.*, No. CIV. 12-00244 BMK, 2013 WL 398718, at *6 (D. Haw. Jan. 31, 2013) (defining the third element under Hawai'i law as: "the conduct was severe or pervasive and served the purpose of interfering with his work performance or creating an intimidating, hostile, or offensive work environment"). "Essentially, the 'severe or pervasive' requirement reflects a general concern that an employer not be held

24

liable for trivial conduct." *Nelson v. Univ. of Haw.*, 97 Hawai'i 376, 390, 38 P.3d 95, 109 (2001) (citing *Faragher*, 524 U.S. at 788).

Examining cases applying this Hawai'i standard, it is clear that stray comments cannot support a hostile work environment claim, and isolated incidents will not create a hostile work environment unless they are exceptionally serious. *See, e.g.*, *Lalau*, 938 F. Supp. 2d at 1012 (finding no hostile work environment when supervisor allegedly made comment about needing to keep the office "safe" from Plaintiff because he was a "typical Samoan"); *Arquero*, 104 Hawai'i at 431–32, 91 P.3d at 513–14 (finding conduct was severe when defendant grabbed plaintiff's buttock); *Steinberg v. Hoshijo*, 88 Hawai'i 10, 19, 960 P.2d 1218, 1227 (1998) (finding evidence sufficient to deny motion for summary judgment when defendant snapped plaintiff's bra strap, rubbed against her, and regularly commented on employees' breasts).

If a plaintiff's supervisors[5] created the hostile work environment, the employer is vicariously liable. *E.E.O.C. v. Glob. Horizons, Inc.*, 904 F. Supp. 2d 1074, 1086 (D. Haw. 2012). If a supervisor did not create the hostile work

---

[5] The Supreme Court has held, "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807.

environment, an employer is only liable when the employer had actual or constructive knowledge of the harassment and failed to remedy it. *Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir. 1991).

Here, Defendant primarily contends that Plaintiff's allegations do not demonstrate "severe and pervasive" conduct that created a hostile work environment. The Court agrees.[6]

To support his hostile work environment claim, Plaintiff heavily relies on *Ellison v. Brady*. There, the plaintiff's sexual harassment claim survived a motion for summary judgment when her coworker pestered her at her desk,

---

[6] The Court accordingly finds it unnecessary to address whether Plaintiff was subject to verbal conduct of a racial nature and whether the conduct was unwelcome. When evaluating whether conduct is unwelcome, the Court notes that Plaintiff can only rely on race-based conduct to support his hostile work environment claim. To establish conduct was of a racial nature, the plaintiff must prove "that the hostility related to something prohibited by the applicable employment discrimination statute." *Lalau*, 938 F. Supp. 2d at 1016. A workplace that is "disorganized, volatile, stressful, and sometimes violent" will not be considered a hostile work environment if most of the incidents the plaintiff cites are not racial in nature or motivated by race. *Kaulia*, 504 F. Supp. 2d at 972; *see also Vanhorn v. Hana Grp., Inc.*, 979 F. Supp. 2d 1083, 1098 (D. Haw. 2013) ("[The assumption that] references to Plaintiff being from the mainland are racial in nature [] is an untenable stretch[.]"); *Aoyagi*, 140 F. Supp. 3d at 1057 (noting that a supervisor's comments that the plaintiff was not skilled or professional enough were performance-based comments, not race-based comments). A plaintiff cannot point to a coworker's isolated racial epithets to successfully argue that other, non-related incidents were motivated by race. *See Mizraim v. NCL Am., Inc.*, No. CIV. 11-00077 JMS, 2012 WL 6569300, at *13 (D. Haw. Dec. 14, 2012).

followed her around the office, and wrote her letters saying, "I cried over you last night," and "I know that you are worth knowing with or without sex." *Id.* at 874. The plaintiff's employer transferred her coworker to another office, but after three weeks he asked to return, and the employer approved his return. *Id.* at 875.

The facts Plaintiff alleges do not rise to the level of the pervasive conduct the supervisors ignored in *Ellison.* Plaintiff alleges that Beimes, a supervisor, used the term "haole" in a derogatory manner and "kept using it" after he asked her to stop, but he does not describe the context of her statements or describe specific instances of her using the word. Pl.'s CSF, Wunderlin Decl. at ¶ 75. Plaintiff also alleges that after he filed a formal complaint about the use of the word "haole," his supervisors allowed the conduct to continue. He points to two instances of this: (1) Beimes and Inda heard Plaintiff's coworker, Priscilla Herman say "haole" at a group meeting and did nothing and (2) Beimes heard Cruz say the Mauna Kea culture rites dispute "was because of all you fucking haoles who came over and messed up our land," and did nothing. Pl.'s CSF, Wunderlin Decl. at ¶¶ 72–73, 91, 99–100. Plaintiff also generally alleged that the term "haole" "was a loose word around that location. It was flying out of their mouths constantly." Def.'s CSF, Ex. 1 at 89–90.

Even viewing the evidence in the light most favorable to Plaintiff, Wunderlin has not provided sufficient evidence to establish that he was subject to a pattern of pervasive, offensive conduct created or ignored by his supervisors. Although he claims his coworkers often used the word "haole," he points to only two isolated incidents when supervisors heard coworkers use the word, and only generally describes Beimes' use of the word. As such, Defendant's Motion is GRANTED as to Plaintiff's hostile work environment claim.

## D. Count IV: Retaliation

Plaintiff also asserts Defendant retaliated against him in violation of HRS § 378-2. Section 378-2 prohibits employers from terminating an employee because the employee filed a complaint regarding discriminatory workplace practices. Haw. Rev. Stat. § 378-2(a)(2). To establish a prima facie case of retaliation, Plaintiff must show that: (1) he filed a complaint regarding a discriminatory practice that violates HRS § 378-2; (2) Defendant either terminated him or discriminated against him; and (3) there is a causal link between the complaint and the termination or discrimination. *Lales v. Wholesale Motors Co.*, 133 Hawaiʻi 332, 356–57, 328 P.3d 341, 365–66 (2014). Once a plaintiff establishes a prima facie case of retaliation, "the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action;

and [] if the defendant articulates such a reason, the burden shifts back to the plaintiff to show evidence demonstrating that the reason given by the defendant is pretextual." *Id.*; *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawaiʻi 408, 425, 32 P.3d 52, 69 (2001), *as amended* (Oct. 11, 2001).

Defendant argues that Plaintiff has not provided sufficient evidence of the third element, causation. Def.'s Mem. in Supp. of Mot. at 27. Plaintiff must prove causation consistent with the "traditional principles of but-for causation[.]" *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* Courts may infer causation based on circumstantial evidence, such as the length of time between the protected action and the allegedly retaliatory employment decision. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). While courts sometimes infer causation from temporal proximity alone, those courts hold that the protected activity and adverse employment action must be very close in time. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting that the courts "that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close") (internal citation omitted). In addition, "a specified time period

cannot be a mechanically applied criterion, and [courts] have cautioned against analyzing temporal proximity without regard to its factual setting." *Van Asdale*, 577 F.3d at 1003 (internal citations omitted).

Plaintiffs can use evidence of a decisionmaker's racial animus as evidence of a causal link. *Poland*, 494 F.3d at 1182; *Funai v. Brownlee*, 369 F. Supp. 2d 1222, 1232 (D. Haw. 2004). "When there is no evidence of a decisionmaker's discriminatory animus, a plaintiff can still prove causation by presenting evidence that the decisionmaker simply rubber stamped the decision of a subordinate who did have a retaliatory motive." *Funai*, 369 F. Supp. 2d at 1232 (internal citation omitted). The Ninth Circuit has held:

> [I]f a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process."

*Poland*, 494 F.3d at 1182.

Plaintiff provides the following evidence of causation: (1) the close proximity in time between his complaints and termination, and (2) the continued racial harassment after his complaint showed Defendant had no interest in

"keeping him around." Pl.'s Mem. in Opp'n at 43. Plaintiff initially emailed Inda and Human Resources alleging race discrimination on April 8, 2015, three and a half months before his termination. Def.'s CSF, Ex. 9. He sent a letter to Human Resources on May 5, 2015, two months and one day before his termination. *Id.*, Ex. 11. While the time between Plaintiff's final complaint and his termination may not alone be sufficiently close in time to show causation, Plaintiff has provided additional evidence of causation.

Specifically, Plaintiff has shown there is a genuine issue of material fact as to whether Inda had racial animus towards him. As addressed above, Inda allegedly said that haoles make all the money and Winkleman was told to maintain separate files on Ditty and Plaintiff. A juror could find that Inda had racial animus and a retaliatory motive, and that his motive influenced Mylott and Rolletta's decision to terminate Plaintiff.

Having established a prima facie case for retaliation, the burden shifts to Defendant to proffer evidence of a nondiscriminatory, legitimate reason for his termination. *Lalau*, 938 F. Supp. 2d at 1011. As discussed in regard to Plaintiff's discrimination claim, Defendant cites Plaintiff's multiple customer complaints as a nondiscriminatory reason for his termination. The burden then shifts back to Plaintiff to provide evidence that Defendant's nondiscriminatory reason is

pretextual.  *Id.*  As outlined above, Plaintiff has established there is a genuine issue of material fact as to whether the nondiscriminatory reason is pretextual, based on Inda's comments; evidence that other employees received complaints, yet Inda had Winkleman only keep files on Plaintiff and Ditty; and the fact that Plaintiff was terminated in part for failing to tell a customer that a product was optional, when company policy did not require him to do so.  Therefore, Plaintiff has satisfied his burden and Defendant's Motion is DENIED as to Plaintiff's retaliation claim.

**E.  Punitive Damages**

Defendant moves for summary judgment as to Plaintiff's request for punitive damages.  To establish entitlement to punitive damages, a plaintiff "must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences."  *Masaki v. Gen. Motors Corp.*, 71 Haw. 1, 16, 780 P.2d 566, 575 (1989).  Because punitive damages are derivative and cannot form an independent basis for a claim, *Aoyagi*, 140 F. Supp. 3d at 1061, the Court only considers Plaintiff's request for damages as to his discrimination and retaliation

claims.

Even viewing the evidence in the light most favorable to Plaintiff, the Court finds that he fails show that Defendant "acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference[.]" *Masaki*, 71 Haw. at 16, 780 P.2d at 575; *see also Kahale v. ADT Auto. Servs., Inc.*, 2 F. Supp. 2d 1295, 1302 (D. Haw. 1998) (granting the defendant's motion for summary judgment when plaintiff alleged supervisor made derogatory racial remarks and fired him for his race); *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998) ("[W]e join four other circuits that also require evidence of conduct more egregious than intentional discrimination to support an award of punitive damages in Title VII cases."). Consequently, an award of punitive damages would be inappropriate in this case. The Motion is therefore GRANTED with respect to Plaintiff's prayer for punitive damages.

In sum, the Court finds that Defendant is entitled to summary judgment as to Plaintiff's hostile work environment claim and prayer for punitive damages. Genuine issues of material fact exist as to Plaintiff's discrimination and retaliation claims.

## V. CONCLUSION

In accordance with the foregoing, Defendant's Motion is HEREBY GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED as to Plaintiff's hostile work environment claim asserted in Counts I, II, and III, and his prayer for punitive damages and DENIED as to Plaintiff's discrimination claim asserted in Counts I, II, and III and retaliation claim asserted in Count IV. Counts I, II, and III (discrimination) and Count IV (retaliation) remain for trial.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 17, 2018.

Jill A. Otake
United States District Judge

CIVIL NO. 17-00392 JAO-KSC; *WUNDERLIN V. AB CAR RENTAL SERVICES, INC.*; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AB CAR RENTAL SERVICES, INC'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

34